## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC WINTERS, | No. 4:20-CV-01307 |
| Plaintiff, | (Judge Brann) |
| v. | |
| SUSAN ANDREWS, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 10, 2020

## I.    BACKGROUND

On July 29, 2020, Eric Winters filed a three-count complaint against Susan Andrews, Laurel Green, Clayton Steward, Andrew Onufrak, III, Rocky Sanguedolce, Allen Bennett, C. Roger McRae, and the Montgomery Borough. This case raises claims of First Amendment retaliation (Count 1), the Pennsylvania Whistleblower Law (Count 2), and wrongful discharge in violation of public policy (Count 3).

On September 28, 2020, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  This motion addresses Count 3[1] and is now ripe for disposition; for the reasons that follow, it is granted.

---

[1]    *See* Doc. 6.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[2] and "streamlines litigation by dispensing with needless discovery and factfinding."[3] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[4] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[5]

Following the Roberts Court's "civil procedure revival,"[6] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[7] and *Ashcroft v. Iqbal*[8] tightened the standard that district courts must apply to 12(b)(6) motions.[9]   These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[10]

---

[2]    *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[3]    *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[4]    *Neitzke,* 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[5]    *Neitzke,* 490 U.S. at 327.

[6]    Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[7]    550 U.S. 544 (2007).

[8]    556 U.S. 662, 678 (2009).

[9]    *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[10]    *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[13] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[14]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[16]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts

---

[11]   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[12]   *Iqbal*, 556 U.S. at 678.

[13]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[14]   *Twombly*, 550 U.S. at 556.

[15]   *Iqbal*, 556 U.S. at 679.

[16]   *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

alleged in the light most favorable to [the plaintiff]."[17] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[18] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[19]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[20]

## B.    Facts Alleged in the Complaint

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

Eric Winters was hired a police officer with Montgomery Borough in November 2016.[21] In June 2019, Winters was promoted to Officer in Charge of the Montgomery Borough Police Department.[22] Later that year, he was promoted

---

17  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

18  *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

19  *Iqbal*, 556 U.S. at 678.

20  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

21  Doc. 1 ¶ 11.

22  *Id.* ¶ 14.

to Corporal.[23]  With each promotion, he was told that he was performing well.[24]  In December 2019, Winters requested a raise based on his simultaneous service as Corporal and Officer in Charge.[25]  The Montgomery Borough Council did not give him this raise.[26]

In the aftermath of being denied a raise, Winters stepped into the role of union official to assist other officers with their own grievances.[27]  Winters was later asked by the Mayor of Montgomery Borough to investigate alleged criminal conduct by certain members of the Montgomery Borough Council.  In December 2019 and January 2020, the Mayor instructed Winters to investigate Defendant Clayton Steward for crimes associated with making false statements.[28] In February 2020, Defendant Steward made a motion during a Council meeting to furlough Winters.  The motion to furlough Winters and three other officers was approved.[29]  Winters challenged this furlough during a hearing in March 2020.[30]  After further consideration, Winters and the other officers were not furloughed.[31]

---

[23]  *Id*. ¶ 16.
[24]  *Id*. ¶¶ 12, 15, 16.
[25]  *Id*. ¶ 17.
[26]  *Id*. ¶ 18.
[27]  *Id*. ¶ 22.
[28]  *Id*. ¶¶ 28; 31.  Winters identifies this event as occurring on December 29, 2020.  The Court presumes this to simply be a typographical error and proceeds accordingly.
[29]  *Id*. ¶ 38.
[30]  *Id*. ¶ 40.
[31]  *Id*. ¶ 43.

In March and April 2020, Winters received reports that a councilwoman and Defendant Andrew Onufrak, III, were using and selling illegal drugs.[32]  Winters shared this information with the Mayor and an assistant district attorney; a search warrant was issued, and drugs and evidence were recovered at the councilwoman's residence during a search on May 3, 2020.[33]  The following day, Winters was told by the Montgomery Borough Council that he was being suspended.[34]  On June 29, 2020, Winters was terminated from his position.[35]

### C.    Analysis

As noted above, Defendants move to dismiss only Count 3 of the complaint.[36]  Their argument, in short, is that Winters's wrongful discharge claim must fail because there are other statutory remedies that Winters may rely on to vindicate his rights.[37]

Plaintiff asserts that his discharge was wrongful and violated public policy. Generally, wrongful discharge is not available in Pennsylvania for at-will employees.[38]  There is an exception for when a discharge would violate public policy, but both parties correctly note that these claims are only cognizable if there

---

[32]  *Id*. ¶ 44.
[33]  *Id*. ¶¶ 47-51.
[34]  *Id*. ¶ 52.
[35]  *Id*. ¶ 59.
[36]  *See* Doc. 6.
[37]  *See* Doc. 7.
[38]  *Paul v. Lankenau Hosp.*, 524 Pa. 90 (1990).

is no statutory remedy available for the alleged injury.[39]  "Courts interpreting Pennsylvania law have consistently rejected a separate cause of action for wrongful discharge when a claim . . . is asserted for the same conduct."[40]  Accordingly, if either Count 1 or Count 2 would theoretically provide redress for the injury asserted in Count 3, the wrongful discharge claim must fail.

The wrongful discharge claim alleges that Winters was fired for adhering to orders that he was legally obligated to follow.[41]  In other words, Winters alleges that he was fired for doing his job.  Specifically, he claims that he was ordered to: (1) investigate "alleged criminal conduct on the part of certain members of the Montgomery Borough Council;"[42] and (2) "not advise Officer Houseknecht of the drug related investigations of Council Members."[43]  Winters alleges that Defendants placed him on administrative leave and later fired him for following those orders.[44]

Winters is correct that Count 1 (addressing First Amendment issues) is distinct from the wrongful discharge claim.  Winters alleges that his First Amendment rights were violated when Defendants retaliated against him for his

---

[39]  *See Duran v. County of Clinton*, 2015 WL 5675580 (M.D. Pa. Sept. 25, 2015) (quoting *Bruffett v. Warner Commc'ns Inc.*, 692 F.2d 910 (3d Cir. 1982)).
[40]  *Duran* at *13.
[41]  Doc. 1 ¶¶ 79-80.
[42]  *Id*. ¶ 81.
[43]  *Id*. ¶ 82.
[44]  *Id*. ¶ 86.

union-related work.  This is distinct from the theory of injury in the wrongful

discharge claim.

The claim under the Pennsylvania whistleblower law, however, has factual

overlap with the wrongful discharge claim.  Count 2 alleges that Plaintiff

"witnessed evidence of waste and wrongdoing in relation to . . . Defendant Clay

Steward's holding of an elected position on the Montgomery Borough Councilman

(sic) while he did not reside in Montgomery Borough; and illegal activity of the

Defendants Green and Onufrak in relation to the sale and/or use of illegal drugs."[45]

Winters claims that as a result of his reports on this wrongdoing, "Defendants

discharged, threatened, discriminated and retaliated" against him.[46]

Winters's attempt to distinguish these two is unavailing.  He argues that the

wrongful termination claim is based on his following orders, but that the

whistleblower claim is based on him reporting the waste or wrongdoing.  First,

Winters's "claim for wrongful discharge in violation of public policy arises out of

the same set of facts" as his claim under the whistleblower law.[47]  Second, Winters

has a "statutory remedy available for Defendant[s'] alleged conduct" and therefore

cannot bring a wrongful discharge claim.[48]  In both Counts 2 and 3, Winters claims

that Defendants injured him, in part, by firing him.  Count 2, if successful, would

---

[45] *Id.* ¶ 73.
[46] *Id.* ¶ 74.
[47] *Dougherty v. Ciber, Inc.*, 2005 WL 2030473 at * 6 (M.D. Pa. July 26, 2005).
[48] *Id.*

provide redress for that injury.  Therefore, the wrongful termination claim cannot survive as a matter of law and must be dismissed.

## III.    CONCLUSION

Defendants' Motion to Dismiss Count 3 pursuant to Rule 12(b)(6) is granted.  Plaintiff is granted leave to amend. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[49]  "Circuit case law, however, holds that leave to amend must be given in this situation as well."[50]  It is well settled in this Circuit that leave to amend should be freely granted.

As such, Plaintiff will be given twenty-one days from today's date to file an amended complaint.  If no amended complaint is filed by that date, the action will proceed exclusively as to Counts 1 and 2, as those were not challenged by Defendants in this iteration of the complaint.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge

---

[49]  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997).
[50]  *Id.*